**FEDERAL TRADE COMMISSION,**
**Petitioner,**

v.

**TRW, INC. and its unincorporated division, TRW Credit Data, Respondents.**

**Misc. No. 79–0122.**

United States District Court,
District of Columbia.

Sept. 6, 1979.

Warren S. Grimes, F. T. C., Washington, D. C., for petitioner.

Robert H. Rawson, Jr., Washington, D. C., for respondents.

## MEMORANDUM AND ORDER

HAROLD H. GREENE, District Judge.

This is a proceeding under Section 9 of the Federal Trade Commission Act, 15 U.S.C. § 49, and Section 621(a) of the Fair Credit Reporting Act (FCRA), 15 U.S.C. § 1681s(a), to enforce a subpoena *duces*

*tecum.*[1] Petitioner, the Federal Trade Commission (FTC), seeks the documents as part of an ongoing investigation to determine whether respondent, TRW, Inc. (TRW), is engaging in practices which violate various sections of the FCRA.

Two groups of documents are at issue in this proceeding.[2] The first group, consisting of documents # 001–165 and 183–184, were withheld by TRW on grounds of a qualified "self-evaluative" privilege. The second group, consisting of documents # 180–182, were withheld on grounds of attorney-client privilege. As explained below, the Court does not find either of these grounds to be sufficient in this case.

Documents # 001–165 and 183–184 consist of reports and responses compiled by TRW in the course of a National Consumer Relations Audit which, according to TRW, has been conducted since 1973 to ensure compliance with applicable laws by: (1) maintaining uniform and consistent procedures in its numerous branch consumer relations offices, and (2) developing an audit procedure to provide management and legal counsel with valuable and necessary information to be used in formulating new and improved policies. TRW argues that since the documents contain self-analysis and self-criticism and have been treated somewhat confidentially within TRW, they are properly withheld under the "self-evaluative" privilege, which promotes the strong public policy of encouraging such internal evaluations.

■ The FTC argues that there is no recognized "self-evaluative" privilege, particularly in the context of a law enforcement agency's subpoena enforcement proceeding, and that, in any case, these documents would not fall within its purview. The Court agrees.

While in a line of cases, beginning with *Bredice v. Doctors Hospital, Inc.,* 50 F.R.D. 249 (D.D.C.1970), district courts have, in the exercise of their discretion, denied discovery of certain "self-evaluative" materials to private litigants where an overwhelming public interest favored their continued confidentiality,[3] appellate courts have not done so. See, *e. g., Dixon v. So. Pine Street Corporation,* 516 F.2d 1278 (2d Cir. 1975). As was pointed out in *Lloyd v. Cessna Aircraft Co.,* 74 F.R.D. 518, 522 (E.D.Tenn. 1977), "the qualified privilege . . . at the most remains largely undefined and has not generally been recognized. . . ."

■ Moreover, there are *no* cases in which a law enforcement agency, seeking documents pursuant to its statutory subpoena power in the course of an investigation, has been denied such discovery.[4] In that

1. The subpoena was originally issued on May 21, 1976, and has since been revised.

2. A third group, consisting of documents # 166–179, were withheld on grounds of attorney-client privilege. As the result of information produced in TRW's opposition to this enforcement proceeding, FTC has withdrawn its petition to enforce the subpoena with respect to these documents.

3. Thus, these courts have fashioned a "qualified self-evaluative" privilege. See *Bredice, supra; Gillman v. United States,* 53 F.R.D. 316 (S.D.N.Y.1971); *Banks v. Lockheed-Georgia Co.,* 53 F.R.D. 283 (N.D.Ga.1971); *New York Stock Exchange v. Sloan,* 22 Fed.R.Serv.2d 500 (S.D.N.Y.1976). A contrary line of more recent cases declines to acknowledge or apply such a privilege. See, *e. g., Lloyd v. Cessna Aircraft Co.,* 74 F.R.D. 518 (E.D.Tenn.1977); *Davidson v. Light,* 79 F.R.D. 137, 139 (D.Colo.1978); *Wright v. Patrolmen's Benevolent Association,* 72 F.R.D. 161 (S.D.N.Y.1976); *Ligon v. Frito Lay,* 82 F.R.D. 42 (N.D.Texas 1978). As the

court noted in *Robinson v. Magovern,* 83 F.R.D. 79 (W.D.Pa.1979), most of the cases recognizing the privilege preceded the Supreme Court decision in *United States v. Nixon,* 418 U.S. 683, 709–10, 94 S.Ct. 3090, 3108, 41 L.Ed.2d 1039 (1974), which emphasized that "exceptions to the demand for every man's evidence are not lightly created nor expansively construed." See also *Wright v. Patrolmen's Benevolent Association,* 72 F.R.D. 161, 164 (S.D. N.Y.1976).

4. Section 9 of the Federal Trade Commission Act gives the FTC the power to compel by subpoena all "documentary evidence relating to any matter under investigation." 15 U.S.C. § 49. Although traditional privileges, such as attorney-client or work-product, may apply, *United States v. McKay,* 372 F.2d 174 (5th Cir. 1967), novel privileges generally have not been applied absent a specific statute or acquiescence by the agency. See *F.T.C. v. St. Regis*

regard, the courts have uniformly refused to recognize a "privilege." See, e. g., *Reynolds Metal Co. v. Rumsford,* 564 F.2d 663, 667 (4th Cir. 1976); *United States v. Noall,* 587 F.2d 123, 125–26 (2d Cir. 1978). Compare *Banks v. Lockheed-Georgia Co.,* 53 F.R.D. 283 (N.D.Ga.1971) (private discrimination plaintiffs cannot obtain preliminary report analyzing defendant company's equal employment opportunity problems and affirmative programs) with *Reynolds Metals Co. v. Rumsfeld, supra* (EEOC can obtain copies of civil rights compliance program and related documents).

Even if this Court were to recognize the privilege, however, as the cases applying it point out, it is only a qualified one, and TRW's withheld documents would not fall within its purview.[5] In most instances, the best sources of information about corporate activities are corporate informational mechanisms designed to provide management with the information necessary to make informed business decisions. The documents at issue here contain information at the heart of the FTC's investigation. There is always an arguable need for confidentiality, and elements of self-evaluation and analysis, with respect to these sources. In that regard, the Court does not accept TRW's naked assertion that ordering their disclosure will have a "chilling effect" on future self-evaluative activities. It may be presumed that corporations will continue to monitor themselves to ensure their compliance with the law, as they have done in the past, without the added incentive of a "self-evaluative" privilege.

For these reasons, the Court holds that Documents # 001–165 and 183–184 are not privileged and must be produced. In order to protect any personal expectations of privacy which may inhere in them, however, the Court will order identifying information to be deleted from employee evaluations.

■ Documents # 180–182 consist of a proposal for work to be performed for TRW by the Stanford Research Institute (SRI), a preliminary draft report, and a final report delivered to TRW. TRW seeks to withhold these documents based upon the attorney-client privilege, on the ground that they assisted TRW's lawyers in evaluating TRW's credit reporting system and in preparing for possible litigation with the FTC. This claim is not persuasive.

■ First, even assuming the documents were created to secure legal advice, the findings were sufficiently circulated within TRW as to negate the intention of confidentiality. When a document is prepared for simultaneous review by non-legal as well as legal personnel, it is not considered to have been prepared primarily to seek legal advice and the attorney-client privilege does not apply. *United States v. International Business Machines Corp.,* 66 F.R.D. 206, 213 (S.D.N.Y.1974).[6]

■ More importantly, however, the documents were prepared by an entity outside of TRW. The Attorney-Client privilege does not extend to information and statements obtained by an attorney from third persons. 8 Wright & Miller, *Federal Practice and Procedure:* Civil § 2017 at 137 (1970); *Bird v. Penn Central Co.,* 61 F.R.D. 43, 46–48 (E.D.Pa.1973);[7] *Jack Winter, Inc.*

*Paper Company,* 304 F.2d 731 (7th Cir. 1962); *Falsone v. United States,* 205 F.2d 734 (5th Cir. 1953).

5. For example, in *Bredice, supra,* 50 F.R.D. at 250–51, the Court explained that an overwhelming public interest favored encouraging unimpeded the flow of ideas and advice among doctors who "have a responsibility for life and death decisions." Subjecting them to the discovery process without exception would end such deliberations.

6. Indeed, mere disclosure to a third party waives the privilege. *Philadelphia Electric Co.*

*v. Anaconda American Brass Co.,* 275 F.Supp. 146 (E.D.Pa.1967).

7. The only recognized exception to the rule that the communication must be directly between client and attorney, is for ministerial agents of the attorney (such as clerks or stenographers) whose assistance is essential in the ordinary performance of legal services or of the client (such as messengers or interpreters) who facilitate transmission of the communication. 8 Wigmore, *Evidence* § 2301 at 583; § 2317 at 618 (McNaughton Rev. 1961). Even if this Court were to accept TRW's argument that the exception should be extended to non-ministeri-

*v. Koratron Co.,* 54 F.R.D. 44 (N.D.Calif. 1971). Thus, the privilege does not extend to information disclosed to an attorney by a person outside the organization of a corporate client and its affiliates. *United States v. United Shoe Machinery Corp.,* 89 F.Supp. 357, 358–59 (D.Mass.1950); *City of Philadelphia v. Westinghouse Electric Corp.,* 210 F.Supp. 483, 484 (E.D.Pa.1962). The Stanford Research Institute is such an external entity.

For these reasons the Court holds that Documents # 180–182 are not privileged and must be produced.

Accordingly, it is this 5th day of September, 1979,

ORDERED That petitioner's application to enforce compliance with its subpoena *duces tecum* be and it is hereby granted, and it is further

ORDERED That respondent produce forthwith to petitioner Documents # 001–165 and 180–184 as defined herein.

al agents, the Stanford Research Institute would not fall within that exception. The Court does not view the independent compilation and analysis performed by SRI as the equivalent of simply "translating" data on hand into language which TRW could readily comprehend. Compare *United States v. Koval,* 296 F.2d 918 (2d Cir. 1972) (accountant); *United States v. Alvarez,* 519 F.2d 1036 (3d Cir. 1975) (psychiatrist); *United States v. Judson,* 322 F.2d 460 (9th Cir. 1963) (accountant).