**DRAVO CORPORATION, Plaintiff,**

v.

**LIBERTY MUTUAL INSURANCE CO., The Hartford Accident and Indemnity Company, and Bituminous Casualty Corp., Defendants,**

v.

**HASTINGS INDUSTRIES, INC., Respondent.**

No. 4:CV95–3094.

United States District Court, D. Nebraska.

June 5, 1995.

Lawrence A. Demase, Joseph F. Rodkey, Jr., Kerry A. Kearney, Reed, Smith, Shaw & McClay, Pittsburgh, PA, J. Hodge Alves, III, Hand, Arendall, Bedsole, Greaves & John-ston, L.L.C., Mobile, AL, for Dravo Corporation.

Waldine H. Olson, Schmid, Mooney & Frederick, P.C., Omaha, NE, Richard S. Mannella, Stephen F. Brock, Manta & Welge, Philadelphia, PA, for Liberty Mutual Insurance.

Waldine H. Olson, Schmid, Mooney & Frederick, P.C., Omaha, NE, Steven G. Adams, Lori M. Linger, Stephanie A. Ebers, Siff, Rosen, P.C., New York City, for Hartford Accident & Indemnity Company.

Mary Licari, Bates, Meckler, Bulger & Tilson, Chicago, IL, for Bituminous Casualty Corporation.

Christopher A. Johnson, Conway, Connolly & Pauley, P.C., Hastings, NE, John M. Murtagh, Jr., Lunney, Crocco, DeMaio & Camardella, P.C., White Plains, NY, Charles A. Crocco, Jr., Crocco & DeMaio, New York City, for Hastings Industries, Inc.

## MEMORANDUM AND ORDER

PIESTER, United States Magistrate Judge.

Pending before the court is Defendant Liberty Mutual's and Hartford Accident and Indemnity Corporation's motion to compel document and deposition discovery from nonparty Hastings Industries, Inc. (Filing 1.) For the reasons below, I shall grant the motion.

### I. BACKGROUND

This is yet another strand in the tangled web of litigation that may someday result in the actual cleanup of a environmentally contaminated site at or near Hastings, Nebraska. From 1968 to 1982, Plaintiff Dravo Corporation ("Dravo") operated a manufacturing plant at an industrial plant at the site. Part of Dravo's manufacturing process involved "vapor degreasing," a process which used liquid solutions containing trichloroethylene (TCE), 1,1,1–trichloroethane (TCA), and tetrachoroethene (PCE). Dravo disposed of these solutions through a floor drain, which in turn drained into a sanitary sewer system which apparently leaked, contaminating sur-

rounding soil. Apparently Dravo sold the site in 1982.

Following testing by both the State of Nebraska and the Environmental Protection Agency ("EPA") in the early and mid–1980's, on September 28, 1990 the EPA filed a Unilateral Administrative Order directing Dravo to design and execute a plan to decontaminate the site. In 1991 Dravo sued several other parties (all prior owners or lessees of the contaminated site) for contribution to the expenses required by the EPA's order. The court concluded that the defendants were protected from contribution liability by virtue of a de minimis settlement agreement between them and the EPA. *See Dravo Corp. v. Zuber,* 804 F.Supp. 1182 (D.Neb.1992), *aff'd,* 13 F.3d 1222 (8th Cir.1994) ("contribution suit.") After losing its contribution suit, Dravo sued various insurance companies over policies which might provide indemnity to Dravo regarding the site. *Dravo Corporation v. The Hartford Accident and Indemnity Company, Liberty Mutual Insurance Company, and Bituminous Casualty Corporation,* 92–0674–P–C (S.D.Ala.) ("insurance suit"). The insurance suit remains pending in Alabama, and the discovery dispute here arises from discovery sought with respect to that suit.

This action seeks to compel discovery of certain documents and deposition discovery pursuant to several subpoenas served upon non-party Hastings Industries, Inc. ("Hastings"). Apparently Hastings owned and operated the site from May, 1982 to December, 1983, conducting the same "vapor degreasing" operations as Dravo during that time.[1] (*See* Defendants' Brief, 2; *cf.* Filing 13, Murtagh Aff., at ¶ 3; Filing 1, at ¶ 5.) Although defendants allege that Hastings has been designed as a "Potentially Responsible Party" by the EPA, (Filing 1, at ¶ 5), it was not one of the named parties in Dravo's contribution suit.

On June 11, 1993 Defendant Liberty Mutual served a document subpoena on Hastings pursuant to *Fed.R.Civ.P.* 45, requesting documents relating to the Hastings site and operations. (*See* Defendants' Exh. 1.) Hastings served written objections[2] upon Liberty, after which Hastings and Liberty attempted to resolve their differences. (*See* Defendants' Exh. 10.) On June 13, 1994 Defendant Hartford Insurance Co. served a Rule 30(b)(6) deposition subpoena[3] upon

---

1. Marshalltown Industries, Inc. has owned and operated the site since December, 1983. (*See* Defendants' Brief, at 2 n. 4.)

2. Rule 45 provides in relevant part:

(B) Subject to paragraph (d)(2) of this rule, a person commanded to produce and permit inspection and copying may, within 14 days after service of the subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to inspection or copying of any or all of the designated materials or of the premises. If objection is made, the party serving the subpoena shall not be entitled to copy the materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued. If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production. Such an order to compel production shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection and copying commanded.
*Fed.R.Civ.P.* 45.

3. Rule 30 provides in relevant part:

(a) When Depositions May Be Taken; When Leave Required.
(1) Party may take the testimony of any person, including a party, by deposition upon oral examination without leave of court except as provided in paragraph (2). The attendance of witnesses may be compelled by subpoena as provided in Rule 45.

(b) Notice of Examination: General Requirements; Method of Recording; Production of Documents and Things; Deposition of Organization; Deposition by Telephone.

(6) A party may in the party's notice and in a subpoena name as the deponent a public or private corporation or a partnership or association or governmental agency and describe with reasonable particularity the matters on which examination is requested. In that event, the organization so named shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify. A subpoena shall advise a non-party organization of its duty to make such a designation. The per-

Hastings. (*See* Defendants' Exh. 2.) Hastings again served written objections, not with respect to the deposition *per se*, but rather to the extent an examination schedule attached to the deposition notice constituted a demand for production of documents. (*See* Defendants' Exh. 11.) Pursuant to subsequent communication between counsel, a supplemental Rule 30(b)(6) deposition subpoena was served. (*See* Defendants' Exh. 3.) Hastings again objected with respect to certain examination schedule matters. (*See* Defendants' Exh. 12.) After some delay, the deposition was taken November 15, 1994. (*See* Defendants' Exh. 4.) Dissatisfied with Hastings' production of documents and deposition testimony in response to the subpoenas, defendants have filed the present motion to compel.

Defendant seeks three groups of discovery material: (1) various documents; (2) "full and complete factual answers" to questions posed in the Rule 30(b)(6) deposition; and (3) a proper designee under Rule 30(b)(6).

## II. DISCUSSION

### A. Production of documents

■ Defendants first seek production of three groups of documents. First, defendants seek certain "post–1983" documents pertaining to Hastings' operations at the site, most importantly any vapor degreasing. (*See* Defendants' Brief, at 11–15.) Hastings appears to argue that any such documents have already been produced, although there seems to be some confusion on this point. (*See* Filing 13, Murtagh Aff., at ¶¶ 26–27; *see also* Defendant's Brief, at 14–15.) If Hastings has produced all responsive "post–1983" documents, it should end the confusion and state so directly. If it has not, any withheld documents should now be produced, since Hastings has asserted no privilege and the subject matter is clearly relevant to the insurance litigation.

Second, defendants seek production of certain "[e]nvironmental filings, reports and communications" pertaining to the site. (*See*

Defendants' Brief, at 16.) Rather than address whether it is in possession of any such documents, Hastings simply asserts that the only documents "not produced" are public records, and that it appears defendants have many of the documents already. (*See* Filing 13, Murtagh Aff., at ¶ 4.) As above, if this means that Hastings has produced all "[e]nvironmental filings, reports and communications" in its custody or control responsive to the subpoena, it should clearly say so and end the matter. If it has not, it must do so now since no privilege has been asserted.

Third, defendants seek production of an alleged "Superfund file" apparently referred to during a deposition. (*See* Defendants' Brief, at 16–17.) Hastings asserts that there is no such "Superfund file," but rather only copies of "court papers and correspondence between counsel arising out of this matter, all of which presumably are in the possession [of defendants]." (Filing 13, Murtagh Aff., at ¶ 36.) If Hastings has documents responsive to the subpoena, it must produce them, whether or not they reside in a "Superfund file," since no privilege has been asserted.

### B. Instructions not to answer deposition questions

Defendants next seek to compel answers to deposition questions concerning the "post–1983" documents and "[e]nvironmental filings, reports and communications" discussed above. At various points in the deposition, Hastings' counsel instructed its designee—Richard Hartsock—not to answer certain questions pertaining to these documents. (*See* Defendants' Brief, at 17–23; Defendants' Exh. 4, at 160–63; 113–15.) Hastings argues that Hartsock "attempted, at all times . . . to provide as complete and as detailed answers as he was able." (Filing 13, Murtagh Aff., at ¶ 8.)

■ As the Fourth Circuit decided in a case well before the 1993 Amendments to *Fed.R.Civ.P.* 30:

The questions put to Wagnon were germane to the subject matter of the pending

sons so designated shall testify as to matters known or reasonably available to the organization. This subdivision (b)(6) does not pre-

clude taking a deposition by any other procedure authorized in these rules.
*Fed.R.Civ.P.* 30.

action and therefore properly within the scope of discovery. They should have been answered and, in any event, the action of plaintiff's counsel in directing the deponent not to answer was highly improper. The Rule itself says "Evidence objected to shall be taken subject to the objections", and Professor Wright says it means what it says, citing *Shapiro v. Freeman,* D.C.N.Y.1965, 38 F.R.D. 308, for the doctrine: "Counsel for party had no right to impose silence or instruct witnesses not to answer and if he believed questions to be without scope of orders he should have done nothing more than state his objections." Wright & Miller, *Federal Practice and Procedure: Civil* § 2113 at 419, n. 22 (1970). We agree. If plaintiff's counsel had any objection to the questions, under Rule 30(c) he should have placed it on the record and the evidence would have been taken subject to such objection. If counsel felt that the discovery procedures were being conducted in bad faith or abused in any manner, the appropriate action was to present the matter to the court by motion under Rule 30(d).

*Ralston Purina Co. v. McFarland,* 550 F.2d 967, 973–74 (4th Cir.1977); *cf. Eggleston v. Chicago Journeymen Plumbers' Local Union No. 130, U. A.,* 657 F.2d 890, 901 (7th Cir.1981), *cert. denied,* 455 U.S. 1017, 102 S.Ct. 1710, 72 L.Ed.2d 134 (1982); *Hearst/ ABC–Viacom Entertainment Services v. Goodway Marketing, Inc.,* 145 F.R.D. 59, 63 (E.D.Pa.1992); *Smith v. Logansport Community School Corp.,* 139 F.R.D. 637, 647 (N.D.Ind.1991); *First Tennessee Bank v. Federal Deposit Ins. Corp.,* 108 F.R.D. 640, 640 (E.D.Tenn.1985); *International Union of Elec., Radio and Mach. Workers, AFL–CIO v. Westinghouse Elec. Corp.,* 91 F.R.D. 277 (D.D.C.1981). That a question is repetitive

or irrelevant is not an appropriate ground for instructing a witness not to answer a question. *See Hearst,* 145 F.R.D. at 63 (citing *Gall v. St. Elizabeth Medical Center,* 130 F.R.D. 85, 87 (S.D.Ohio 1990)).

Consistent with such cases, in 1993 the Rule was amended to provide that

> Any objection to evidence during a deposition shall be stated concisely and in a non-argumentative manner and non-suggestive manner. A party may instruct a deponent not to answer only when necessary to preserve the privilege, to enforce a limitation on evidence directed by the court, or to present a motion under paragraph 3.

*Fed.R.Civ.P.* 30(d)(1).[4] The Advisory Committee explains that

> The first sentence of new paragraph (1) provides that any objections during a deposition must be made concisely and in a non-argumentative and non-suggestive manner. Depositions frequently have been unduly prolonged, if not unfairly frustrated, by lengthy objections and colloquy, often suggesting how the deponent should respond. While objections may, under the revised rule, be made during a deposition, they ordinarily should be limited to those that under Rule 32(d)(3) might be waived if not made at that time, i.e., objections on grounds that might be immediately obviated, removed, or cured, such as to the form of a question or the responsiveness of an answer. Under Rule 32(b), other objections can, even without the so-called "usual stipulation" preserving objections, be raised for the first time at trial and therefore should be kept to a minimum during a deposition.
>
> *Directions to a deponent not to answer a question can be even more disruptive*

---

**4.** Paragraph 3 provides:

At any time during a deposition, on motion of a party or of the deponent and upon a showing that the examination is being conducted in bad faith or in such manner as unreasonably to annoy, embarrass, or oppress the deponent or party, the court in which the action is pending or the court in the district where the deposition is being taken may order the officer conducting the examination to cease forthwith from taking the deposition, or may limit the scope and manner of the taking of the deposi-

tion as provided in Rule 26(c). If the order made terminates the examination, it shall be resumed thereafter only upon the order of the court in which the action is pending. Upon demand of the objecting party or deponent, the taking of the deposition shall be suspended for the time necessary to make a motion for an order. The provisions of Rule 37(a)(4) apply to the award of expenses incurred in relation to the motion.

*Fed.R.Civ.P.* 30(d)(3).

*than objections. The second sentence of new paragraph (1) prohibits such directions except in the three circumstances indicated: to claim a privilege or protection against disclosure (e.g., as work product), to enforce a court directive limiting the scope or length of permissible discovery, or to suspend a deposition to enable presentation of a motion under paragraph (3).*

. . . . . .

Advisory Committee Notes, *Fed.R.Civ.P.* 30(d) (emphasis added). *See, e.g., Frazier v. Southeastern Pennsylvania Transp. Authority,* 161 F.R.D. 309, 314 (E.D.Pa.1995); *Bechard v. Costanzo,* (unpublished opinion), available at 1995 WL 105991, at *3 (N.D.N.Y. 1995).

■ Here, Richard Hartsock was instructed not to answer because questions were allegedly outside the scope of the subpoena, (*see* Defendants' Exh. 4, at 113:12–115:7), or were allegedly asked and answered. (*See id.* at 115:22–119:18; 160:25–164:12.) Since there was no claim of privilege, and there has been no showing that the deposition was conducted in bad faith or in such a manner as unreasonably to annoy, embarrass, or oppress Hartsock, the instructions not to answer were "highly improper." *Ralston Purina Co., supra; Fed.R.Civ.P.* 30(d)(1); *see, e.g., Bechard v. Costanzo, supra.* If counsel had objections to the questions, he should have made an explicit 30(c) objection or presented the matter to the court through a proper motion under Rule 30(d)(3). *See* note 4 and accompanying text *supra.* Having failed to do so, I shall order that the deposition be resumed and that Hartsock answer all questions he was instructed not to answer. *See Hearst, supra.*[5]

## C. Rule 30(b)(6) designee

■ Finally, defendants object to Hastings' alleged failure to produce a "knowledgeable and prepared" designee under *Fed. R.Civ.P.* 30(b)(6). (*See* Defendants' Brief, at 23–26.) Rule 30(b)(6) provides in relevant part that the person designated to testify on the corporation's behalf "shall testify as to matters known or reasonably available to the organization." *See* note 3 and accompanying text *supra.* "If the rule is to promote effective discovery regarding corporations the spokesperson must be informed." *Protective Nat. Ins. Co. of Omaha v. Commonwealth Ins. Co.,* 137 F.R.D. 267, 278 (D.Neb.1989). Thus, " '[the corporation] must make a conscientious good-faith endeavor to designate the persons having knowledge of the matters sought by [the interrogator] and to prepare those persons in order that they can answer fully, completely, unevasively, the questions posed by [the interrogator] as to the relevant subject matters.' " *Id.* (quoting *Mitsui & Co. v. Puerto Rico Water Resources Authority,* 93 F.R.D. 62, 67 (D.P.R.1981)); *see also S.E.C. v. Morelli,* 143 F.R.D. 42, 45 (S.D.N.Y. 1992); *Marker v. Union Fidelity Life Insurance Co.,* 125 F.R.D. 121, 126 (M.D.N.C.1989) (under Rule 30(b)(6), deponent "must not only produce such number of persons as will satisfy the request, but more importantly, prepare them so that they may give complete, knowledgeable and binding answers on behalf of the corporation.") If no current employee has sufficient knowledge to provide the requested information, the party is obligated to "prepare [one or more witnesses] so that they may give complete, knowledgeable and binding answers on behalf of the corporation." *Marker,* 125 F.R.D. at 126. Also, if it becomes obvious during the course of a deposition that the designee is deficient, the corporation is obligated to provide a substitute. *See id.*

■ Here, defendants assert that Richard Hartsock, Hastings' 30(b)(6) designee, was not knowledgeable about the vapor degreasing procedure at the Hastings site, and was therefore "unprepared to testify concerning virtually all of the examination matters set forth in the deposition subpoenas." (Defendants' Brief, at 25.) Hastings responds that

Hastings has repeatedly made it clear to all parties that, other than Mr. Hartsock, there are no corporate representatives with knowledge of the matter set forth in the subpoenas, such individuals as do pos-

---

**5.** Of course, should Hastings' other ordered disclosures and/or production of documents render the specific questions moot, the deposition need not be resumed.

sess such knowledge are not under Hastings' control and movants are, in any event, free to notice the depositions of those individuals if they have not already done so.

(Filing 13, Murtagh Aff., at ¶ 31.) An examination of the deposition clearly demonstrates that Hartsock was deficient as a witness with respect to many of the areas examined in the subpoena. If, as Hastings asserts, Hartsock is the most knowledgeable employee within its control, Hastings is obligated to prepare him so that he may give "complete, knowledgeable and binding answers on behalf of the corporation." *Marker*, 125 F.R.D. at 126. If Hastings does not possess such knowledge as to so prepare Hartsock or another designate, then its obligations under Rule 30(b)(6) obviously cease, since the rule requires testimony only as to "matters known or reasonably available to the organization." *Fed.R.Civ.P.* 30(b)(6), *supra.*

In sum, since Hastings has raised no privilege issues, it is obligated to produce documents and testify as to matters responsive to the subpoenas. It is also obligated to allow Hartsock to answer those question he was instructed not to answer, and to produce a more knowledgeable designee under *Fed. R.Civ.P.* 30(b)(6) if it is in the position to do so. If Hastings believes specific discovery requests or questions are beyond the scope of the subpoenas, it may properly object and the testimony will be taken subject to the objection, unless privilege is asserted.

**IT THEREFORE HEREBY IS ORDERED** that Defendant's motion to compel (Filing 1) is granted in accordance with the terms of this memorandum, and:

1. Hastings shall, by June 30, 1995, either produce the documents discussed in II.A. above or specifically indicate that those documents have previously been produced.

2. Defendants may, within 60 days, resume the deposition of Richard Hartsock (or another knowledgeable designee) under *Fed. R.Civ.P.* 30(b)(6) so that all questions Hartsock was instructed not to answer may be answered, if such deposition is still necessary after Hastings' compliance with paragraph 1. above. All expenses of such deposition, if taken, shall be borne by Hastings, including travel expenses for one attorney for each party, attorneys fees (for the time consumed by the deposition only) and court reporter fees.