**BIOVAIL LABORATORIES, INC.,**

v.

**ANCHEN PHARMACEUTICALS, INC.**

**No. SACV04–1468–JVS(RCX).**

United States District Court, C.D. California.

Feb. 23, 2006.

Charles R. Stern, attorney-at-law, Katten Muchin Rosenman, Los Angeles, CA, for the plaintiff.

Neal R. Marder, Stacey N. Knox, attorneys-at-law, Winston & Strawn, Los Angeles, CA, for Defendant.

**PROCEEDINGS: (IN CHAMBERS) (1) ORDER DENYING DEFENDANT'S MOTION TO COMPEL PRODUCTION OF DOCUMENTS; AND (2) ORDER GRANTING DEFENDANT'S MOTION TO COMPEL DEPOSITION OF DR. PAWAN SETH AND FOR MONETARY SANCTIONS AND DENYING DEFENDANT'S MOTION FOR EXTREME SANCTIONS**

CHAPMAN, United States Magistrate Judge.

On February 8, 2006, defendant Anchen Pharmaceuticals, Inc. ("defendant") filed a

notice of motion and motion to compel production of documents, a joint stipulation, and the supporting declaration of Stacey N. Knox, with exhibits. On February 10, 2006, defendant filed a notice of motion and motion to compel the deposition of Dr. Pawan Seth, a joint stipulation, and the declaration of Stacey N. Knox with exhibits. On February 13, 2006, defendant filed a supplemental brief and the supplemental declaration of Stacey N. Knox, with exhibits.

Pursuant to Local Rule 7–15, these matters are decided in Chambers without oral argument.

## BACKGROUND

### I

On March 16, 2005, defendant served its first set of requests for production of documents ("the first set") on plaintiff. Knox Decl., ¶ 2, Exh. A. Plaintiff initially responded to the first set on or about April 15, 2005, and provided a supplemental response on or about January 20, 2006. Knox Decl., ¶¶ 3, 18, Exhs. B, P. Plaintiff's responses to Requests nos. 9 and 10 are the subjects of one of the motions to compel.

Request no. 9 of the first set seeks:

All documents and things that Plaintiffs assert constitute a complete copy of the file history for any foreign counterparts of the patents-in-suit.[1]

Knox Decl., ¶ 2, Exh. A at 10 (footnote added). Request no. 10 of the first set seeks:

Any and all drafts of the documents that were submitted to any foreign patent office in connection with the prosecution of application(s) from which any foreign counterparts of the patents-in-suit issued, including any internal correspondence and/or memoranda.

*Id.* In its initial responses to Requests nos. 9 and 10, plaintiff responded:

Objection: Biovail objects to this Request to the extent that it calls for the produc-

tion of documents that are protected from discovery by the attorney-client privilege.

**Response**: Biovail will produce non-privileged documents.

Knox Decl., ¶ 3, Exh. B at 21. In its supplemental responses to Requests nos. 9 and 10, plaintiff further responded:

As there are no foreign counterparts of the patents-in-suit, no such documents exist.

Knox Decl., ¶ 18, Exh. P at 96–97.

### II

On May 31, 2005, defendant issued a subpoena *duces tecum* under Fed.R.Civ.P. 45 to Dr. Pawan Seth ("Seth"),[2] to produce certain documents at defendant's counsel's office on June 23, 2005, and to appear for a deposition on August 11, 2005. Knox Decl., ¶ 3, Exh. A. On June 2, 2005, the Rule 45 subpoena was personally served on Dr. Seth. *Id.* Thereafter, plaintiff's counsel, the law firm Katten Muchin Rosenman ("KMR"), confirmed to defendant, both in writing and orally before District Judge Selna, that it was representing Dr. Seth "regarding his response to the subpoena[,]" *id.,* ¶¶ 4–5, Exhs. B–C, and discussions took place between defendant's counsel and KMR about Dr. Seth's compliance with the Rule 45 subpoena. *Id.,* ¶¶ 6–11, Exhs. D–H.

Dr. Seth did not appear for his deposition until February 2, 2006. Knox Decl., ¶ 12, Exh I. At his deposition, Dr. Seth was represented by Charles R. Krikorian, attorney-at-law with KMR, plaintiff was represented by Donna M. Praiss, attorney-at-law with Hunton & Williams, and defendant was represented by Donald J. Mizerk. *Id.* Shortly after the deposition began, the following exchange took place between Mr. Mizerk, who was examining Dr. Seth, Dr. Seth and Mr. Krikorian:

Q  When were you first contacted by anyone from Biovail or their counsel in connection with providing a deposition in the case of Biovail versus Anchen?

A I was not contacted by Biovail.

---

1. Defendant defined the term "Patents-in-suit," to mean "U.S. Patent Nos. 6,096,341 and 6,143,-327." Knox. Decl., ¶ 2, Exh. A at 6.

2. From the joint stipulation and other documents, the Court gleans that Dr. Seth is the inventor of patents '341 and '327, which he sold to plaintiff and which are the subject of this litigation.

Q Who were you contacted by with regard to a deposition in the Anchen case?

A By my—by my legal counsel here, Harold Nelson.

Q And when did Mr. Nelson contact you in regard to the deposition in the Anchen case?

A It was just a couple of weeks back. I don't remember exactly.

Q Did anyone contact you in July of 2005 regarding a request by Anchen to take your deposition?

A I don't remember.

Q Were you subpoenaed in—did you or your company receive a subpoena in July or August, 2005, with regard to a deposition in the Anchen versus—or the Biovail versus Anchen case?

A I don't remember.

Q Was there any reason why you could not appear for a deposition, that you can think of now, in August, 2005, in Biovail versus Anchen?

MR. KRIKORIAN: Objection to the form of the question. Calls for a legal conclusion.

THE WITNESS: August, 2005. I think I was out of the country.

BY MR. MIZERK:

Q You were—where were you—for the whole month of August 2005?

MR. KRIKORIAN: Objection to the form of the question.

THE WITNESS: I don't remember the exact dates.

BY MR. MIZERK:

Q Is there any reason why you could not have sat for a deposition for one day in August 2005?

MR. KRIKORIAN: Asked and answered. You're harassing the witness.

THE WITNESS: It would be a reason if I was not in the country.

BY MR. MIZERK:

Q But do you know whether or not you were outside of the country for the entire month of August 2005?

MR. KRIKORIAN: Asked and answered. You're still harassing the witness.

THE WITNESS: I don't remember if I was out of the country for the whole month or not.

BY MR. MIZERK:

Q If you—okay. Were you out of the country for the whole month of September 2005?

A Don't remember. Maybe part of it.

Q So part of the month. [¶] Is there any reason why—that you can think of, that you could not have sat down for a deposition for one day during the month of September, 2005?

MR. KRIKORIAN: Objection to the form of the question. Calls for a legal conclusion. It's badgering and harassing.

THE WITNESS: At this time, I don't know.

BY MR. MIZERK:

Q Okay. So is there any reason you can think of why you could not sit for a deposition during October, 2005, for a day?

MR. KRIKORIAN: Objection to the form of the question. Harassing, badgering.

THE WITNESS: I don't remember what I was doing in October, on which day and what time.

BY MR. MIZERK:

Q So as you sit here today, you can't think of any reason why you could not have been present at a deposition for one day during the month of September or October, 2005?

MR. KRIKORIAN: Objection to the form of the question. Asked and answered. Harassing and badgering. [¶] Can't you move on, Don?

THE WITNESS: If I was doing something else, or if I was not in the country, or I would not be able to appear for a deposition.

BY MR. MIZERK:

Q I'm just asking you. Can you recall anything at all that you were doing or not doing that would have prevented you from sitting for a deposition for one day?

A And I told you, that if I was doing something, I would not be able to appear for a deposition.

Q And I'm asking you if you recall whether you were doing something.

MR. KRIKORIAN: Don. Don, you're badgering and harassing the witness, and it needs to stop or we will stop this deposition. This is pointless, and you know it. [¶] Now, let's move on. We're here for this deposition now. The man is running a company. Let's proceed.

THE WITNESS: Let's see if I can recall in October what I was doing. [¶] No, I can't recall right now.

BY MR. MIZERK:

Q Can you recall whether you were doing anything or not doing anything during November of 2005 that would have prevented you from sitting for a deposition in the Biovail versus Anchen case?

MR. KRIKORIAN: Objection to the form of the question.

THE WITNESS: I'm pretty sure I was doing something.

BY MR. MIZERK:

Q So you were doing something—

A Yes.

Q —the whole month that would have prevented you from sitting for a deposition for the entire month of November, 2005?

MR. KRIKORIAN: Why—

THE REPORTER: I need one at a time.

MR. KRIKORIAN: Why are you continuing to do this? What is the point of this, other than to harass and badger this witness? He's here for his deposition, now please continue on a relevant line of questioning. This is absurd.

VIDEOGRAPHER: Off the record. The time is 9:29 a.m.

(Attorney–Client conference held.)

MR. KRIKORIAN: Okay. We're done. We're gone. We're leaving. Mr. Mizerk wants to continue on this harassing, badgering line of questioning. Mr. Seth is not going to sit for this, so the deposition is concluded. [¶] We can put that on the record.

THE WITNESS: Thank you.

VIDEOGRAPHER: Do you want this on the video?

MR. KRIKORIAN: I don't care.

VIDEOGRAPHER: Back on the record. The time is 9:30 a.m.

MR. KRIKORIAN: Thank you, Dr. Seth.

MR. MIZERK: Whoa, whoa.

MR. KRIKORIAN: Okay. Are we on the record?

THE REPORTER: Yes.

MR. KRIKORIAN: Okay. Thank you. Based on Mr. Mizerk's continuing line of harassing and badgering questions, Dr. Seth has terminated this deposition. [¶] Mr. Mizerk's conduct was wholly inappropriate and, therefore, Biovail and Dr. Seth consider this deposition concluded. [¶] Thank you.

MR. MIZERK: Well, obviously, Charlie, we—we don't agree with you. I only asked the man whether there was any reason why he couldn't have sat for his deposition when we noticed it.

MR. KRIKORIAN: The record will speak for itself.

MR. MIZERK: Oh, it does speak for itself, Charlie. So I guess we'll just be before the judge. And this is just another example of inappropriate conduct that you've engaged in in this litigation.

MR. KRIKORIAN: I appreciate that, Don.

MR. MIZERK: I'm glad you do appreciate it. And you guys will be paying our and [your] expenses, and you will be sanctioned—

MR. KRIKORIAN: Absolutely. As you wish. Make your motion. [¶] Thank you very much. We're done.

VIDEOGRAPHER: Off the record. The time is 9:31 a.m. (Deposition proceedings concluded at 9:31 a.m.)

*Id.*

## DISCUSSION

### III

Rule 26(b)(1) permits discovery in civil actions of "any matter, not privileged, that is relevant to the claim or defense of any party...." Fed.R.Civ.P. 26(b)(1). " 'Generally,

the purpose of discovery is to remove surprise from trial preparation so the parties can obtain evidence necessary to evaluate and resolve their dispute.'" *Moon v. SCP Pool Corp.*, 232 F.R.D. 633, 636 (C.D.Cal. 2005) (quoting *Oakes v. Halvorsen Marine Ltd.*, 179 F.R.D. 281, 283 (C.D.Cal.1998)). "Toward this end, Rule 26(b) is liberally interpreted to permit wide-ranging discovery of information even though the information may not be admissible at the trial." *Id.* (citing *Jones v. Commander, Kansas Army Ammunitions Plant*, 147 F.R.D. 248, 250 (D.Kan.1993)). All discovery, and federal litigation generally, is subject to Rule 1, which directs that the rules "shall be construed and administered to secure the just, speedy, and inexpensive determination of every action." Fed.R.Civ.P. 1; *Moon*, 232 F.R.D. at 636.

## IV

Defendant explains in the joint stipulation that Requests nos. 9 and 10 seek documents relating to U.S. Patent no. 6,033,686 ("'686 patent"), which "is related to one of the patents-in-suit, the '341 patent, which comes from the same family of drugs, and is largely duplicative of the '686 patent...." Jt. Stip. at 3:25–4:1. Thus, defendant argues, these document requests seek relevant information under Fed.R.Civ.P. 26(b). Moreover, defendant also contends that since plaintiff did not initially raise relevancy objections to these requests, any relevancy objections have been waived and plaintiff must turn over all responsive documents. On the other hand, defendant argues that '686 patent is a United States patent, not a "foreign counterpart" to the "patents-in-suit," as defined by defendant in the first set; thus, plaintiff contends Requests nos. 9 and 10 cannot possibly seek information related to the '686 patent. Further, plaintiff contends that if defendant sought documents related to the '686 patent, it could have made a specific request for the production of such documents, but it did not do so.

The Court agrees with plaintiff. A plain reading of Requests nos. 9 and 10, which seek documents relating solely to "foreign counterparts" of the "patents-in-suit," demonstrates these requests do not seek documents pertaining to the '686 patent since the '686 patent is a United States patent, Knox Decl., ¶ 5, Exh. D, and cannot be considered a "foreign counterpart" to the "patents-in-suit." [3] *See, e.g., In re Greenwood Air Crash*, 161 F.R.D. 387, 391–92 (S.D.Ind. 1995) (party "is entitled to rely on the plain meaning of [a discovery request]" in providing a response to request).[4]

Finally, plaintiff requests attorney's fees and costs in connection with opposing defendant's motion to compel "if Biovail is required to further address these issues, or if its counsel is forced to travel to California for a hearing on this motion...." Jt. Stip. at 17:1–6. Since the Court has decided this motion in Chambers without oral argument, the Court denies without prejudice plaintiff's request for monetary sanctions made in plaintiff's supplemental memorandum.

## V

Rule 30 governs counsel's behavior during a deposition. In particular, Rule 30(c) provides:

> Examination and cross-examination of witnesses may proceed as permitted at the trial.... All objections made at the time of the [deposition] examination ... to the manner of taking it, ... to the conduct of any party, or to any other aspect of the proceedings shall be noted by the [court reporter] upon the record of the deposition; but the examination shall proceed, with the testimony being taken subject to the objections.

Fed.R.Civ.P. 30(c). Rule 30(d) further provides that:

> Any objection during a deposition must be stated concisely and in a non-argumenta-

---

3. Foreign, in this context, plainly means "[o]f or relating to another country." *Black's Law Dictionary*, 658 (7th ed.1999); *see also Merriam-Webster's Collegiate Dictionary*, 455 (10th ed.2002) (defining foreign as "related to or dealing with other nations.").

4. By reading Requests nos. 9 and 10 as plaintiff does, the Court finds it unnecessary to determine whether plaintiff's objections in its supplemental responses are relevancy objections and whether such objections have been waived.

tive and non-suggestive manner. A person may instruct a deponent not to answer only when necessary to preserve a privilege, to enforce a limitation directed by the court, or to present a motion under Rule 30(d)(4).

Fed.R.Civ.P. 30(d)(1). Rule 30(d)(4) provides that, on motion of a party or deponent, at any time during a deposition,

> upon a showing that the examination is being conducted in bad faith or in such manner as unreasonably to annoy, embarrass, or oppress the deponent or party, the court in which the action is pending or the court in the district where the deposition is being taken may order the officer conducting the examination to cease forthwith from taking the deposition, or may limit the scope and manner of the taking of the deposition as provided in Rule 26(c). If the order made terminates the examination, it may be resumed thereafter only upon the order of the court in which the action is pending. Upon demand of the objecting party or deponent, the taking of the deposition must be suspended for the time necessary to make a motion for an order. The provisions of Rule 37(a)(4) apply to the award of expenses incurred in relation to the motion.

Fed.R.Civ.P. 30(d)(4).

Rule 30(d)(4) "is the only authority allowing the interruption of a deposition." *Perrignon v. Bergen Brunswig Corp.*, 77 F.R.D. 455, 460–61 n. 4 (N.D.Cal.1978); *Hanlin v. Mitchelson*, 623 F.Supp. 452, 455 (S.D.N.Y. 1985), *reversed in part on other grounds*, *Hanlin v. Mitchelson*, 794 F.2d 834 (2d Cir. 1986). "To obtain a protective order under Rule [30(d)(4)], 'the moving party must show that the examination is being conducted in bad faith or in such manner as unreasonably to annoy, embarrass, or oppress the witness or party. Unless a sufficient showing of these grounds are made the motion will be denied.'" *Hearst/ABC–Viacom Entertainment Servs. v. Goodway Marketing, Inc.*, 145 F.R.D. 59, 62 (E.D.Pa.1992) (citation omitted); *Smith v. Logansport Community School Corp.*, 139 F.R.D. 637, 640 (N.D.Ind. 1991).

Here, Mr. Krikorian, without making the slightest effort to comply with the appropriate procedures for terminating a deposition under Rule 30(d)(4), took it upon himself to unilaterally terminate the deposition of Dr. Seth. "This tactic contravenes the requirement that an application to terminate must be made to the court." *Hearst/ABC–Viacom Entertainment Servs.*, 145 F.R.D. at 62; *see also In re Omeprazole Patent Litigation*, 227 F.R.D. 227, 230 (S.D.N.Y.2005) ("It is not the prerogative of counsel, but of the court, to rule on objections.... [I]f the plaintiff's attorney believed that the examination was being conducted in bad faith ... or that the deponents were being needlessly annoyed, embarrassed, or oppressed, he should have halted the examination and applied immediately to the ex parte judge for a ruling on the questions, or for a protective order, pursuant to Rule 30(d)." (citation omitted)); *Smith*, 139 F.R.D. at 643 ("If plaintiffs' counsel believed that the deposition was being conducted in bad faith, or that [the deponent] was being unreasonably annoyed, embarrassed or harassed, he should have suspended the deposition at that juncture, stated his complaints on the record, and applied immediately to the court for protection under Rule 30(d).").

To enforce its directives for the behavior of counsel, Rule 30 provides that:

> If the court finds that any impediment, delay, or other conduct has frustrated the fair examination of the deponent, it may impose upon the persons responsible an appropriate sanction, including the reasonable costs and attorney's fees incurred by any parties as a result thereof.

Fed.R.Civ.P. 30(d)(3). Accordingly, monetary sanctions are the sanctions primarily available under Rule 30(d)(3). *Phinney v. Paulshock*, 181 F.R.D. 185, 206 n. 49 (D.N.H. 1998), *affirmed by, Phinney v. Wentworth Douglas Hosp.*, 199 F.3d 1 (1st Cir.1999); *ARP v. Amezaga*, 195 B.R. 221, 228–29 (Bankr.D.P.R.1996). Similarly, Rule 37(a)(4)(A) provides that if a motion compelling discovery is granted, the Court shall:

> after affording an opportunity to be heard, require the party or deponent whose conduct necessitated the motion or the party

or attorney advising such conduct or both of them to pay to the moving party the reasonable expenses incurred in making the motion, including attorney's fees, unless the court finds that ... the opposing party's nondisclosure, response, or objection was substantially justified.

Fed.R.Civ.P. 37(a)(4)(A).

Here, defendant seeks the following sanctions against plaintiff: (1) Dr. Seth should be ordered to appear for his deposition, and defendant should have the option of extending the deposition to a second day since "Dr. Seth is not forthcoming or cooperative and has impeded and delayed the deposition"; (2) monetary sanctions under Fed.R.Civ.P. 37(a)(4), including attorney's fees and costs attendant to the motion to compel and "expenses, including travel, related to the need for a second deposition session with Dr. Seth"; (3) preclusive evidentiary sanctions preventing plaintiff "from relying on any evidence from Dr. Seth at trial"; and (4) termination of plaintiff's 30–month stay due to plaintiff's "improper litigation tactics, such as delaying Dr. Seth's deposition...." Jt. Stip. at 9–12. Although defendant seeks all sanctions against plaintiff, in fact, the first sanction of resetting Dr. Seth's deposition and the second sanction of monetary reimbursement may be directed toward nonparty Dr. Seth.

Since Dr. Seth was not produced for his deposition until months after he was personally served with a Rule 45 subpoena, and his appearance was after the Markman hearing and close to the discovery cut-off date, it was neither irrelevant nor harassing for defendant to attempt to discover why Dr. Seth's deposition had been delayed. However, as the above deposition transcript shows, Mr. Krikorian did not like the questions asked about why Dr. Seth's deposition was delayed, and he became disruptive and caused Dr. Seth's deposition to end abruptly and improperly.[5] Such conduct cannot be condoned. *Hearst/ABC–Viacom Entertainment Servs.*, 145 F.R.D. at 62; *Smith*, 139 F.R.D.

at 643. Moreover, it also appears from the deposition transcript that, as defendant notes, Mr. Krikorian had not prepared Dr. Seth for his deposition, and had not shown him documents to refresh his recollection. Without going into great detail, the Court finds the examination by defendant's counsel was not harassing or badgering, and defendant's motion to compel the continued deposition of Dr. Seth should be granted. To assure Dr. Seth's deposition is productive, the Court will require that Mr. Krikorian prepare Dr. Seth for the deposition in advance of his deposition and, at a minimum, show Dr. Seth documents to refresh his recollection. Requiring this preparation should obviate the need for a second day of deposition by Dr. Seth. However, if Dr. Seth is nonresponsive at the deposition, the Court will consider ordering another day.

Further, grounds exist under Rules 30(d)(3) and 37(a)(4)(A) to impose monetary sanctions against Dr. Seth and his counsel, Mr. Krikorian. *Johnson v. Wayne Manor Apartments*, 152 F.R.D. 56, 59–60 (E.D.Pa. 1993); *Hearst/ABC–Viacom Entertainment Servs.*, 145 F.R.D. at 63–64. However, plaintiff has not produced competent evidence supporting its request for attorney's fees, and without such proof, the Court is unable to set the amount of fees. If plaintiff intends to pursue this request, it should file a declaration or declarations setting forth the exact hours worked by, and the usual hourly fees of, counsel in preparing this discovery motion, as well as proof of any costs incurred in the first deposition, as set forth in the Order below. Further, Dr. Seth and his counsel should be responsible for the costs attendant to resetting Dr. Seth's deposition, including travel costs for defendant's counsel. *See Quantachrome Corp. v. Micromeritics Instrument Corp.*, 189 F.R.D. 697, 701 (S.D.Fla.1999) ("Because [defendant] caused the need for further depositions, the Court finds that [defendant] should bear the costs

---

**5.** A reasonable inference may be drawn from Mr. Krikorian's conduct that the answers to these questions would not have reflected well on Mr. Krikorian's firm, KMR. Further, it is clear from the deposition transcript and subsequent events

that Mr. Krikorian did not end the deposition to seek a protective order. He never stated that was his purpose, and he never filed a motion for a protective order.

of bringing this Motion to Compel and of retaking the deposition(s).").

Although Dr. Seth and plaintiff are both represented by KMR, the Court does not yet infer plaintiff is responsible for the conduct of Dr. Seth and KMR at Dr. Seth's deposition, and the Court is loathe to sanction plaintiff based on KMR's conduct. Nevertheless, defendant has been attempting to depose Dr. Seth for more than six months, and has continuously been stonewalled by KMR, who, at various times, states it represents Dr. Seth and at other times denies it represents Dr. Seth. Yet, at this time, the Court finds defendant's request for sanctions against plaintiff is without basis and should be denied without prejudice. In the event KMR again interferes with the taking of Dr. Seth's deposition, the Court would consider sanctioning plaintiff by preventing it from presenting any evidence from Dr. Seth at the trial in this matter.

### ORDER

1. Defendant's motion to compel production of documents IS **DENIED**.

2. Defendant's motion to compel the deposition of Dr. Pawan Seth **IS GRANTED**, and Dr. Seth shall appear for his deposition at 9:30 a.m. on March 8, 2006, at the law offices of Winston & Strawn, 333 S. Grand Avenue, Los Angeles, California 90071.

3. Dr. Seth and his counsel, Mr. Krikorian, shall meet on March 7, 2006, to prepare Dr. Seth for the deposition, and, no later than March 21, 2006, Mr. Krikorian shall file a declaration attesting to the meeting, its location and the amount of time he spent preparing Dr. Seth.

4. Defendant's request for monetary sanctions regarding its motion to compel deposition **IS GRANTED**, and Dr. Seth and his counsel, Charles R. Krikorian, are jointly and severally, liable for the following sanctions:

(a) The costs of the videographer/court reporter at the deposition of Dr. Seth on February 2, 2006;

(b) The reasonable roundtrip coach airfare of defendant's counsel, Mr. Mizerk, from Chicago to Los Angeles, and the reasonable cost

of two nights lodging while in Los Angeles for Dr. Seth's deposition on March 8, 2006.

Defendant shall present a bill for costs (a) and (b) to Dr. Seth no later than April 10, 2006, and Dr. Seth and his counsel shall reimburse defendant within thirty (30) days thereof; and

(c) Attorney's fees in bringing the successful motion to compel Dr. Seth's deposition. To support this award, defendant shall file a declaration or declarations by its counsel, within ten (10) days of the date of this Order, setting forth defendant's counsel's hours and rate(s) of pay per hour and detailing the time spent on the motion to compel the deposition of Dr. Seth. Dr. Seth may file objections to the reasonableness of defendant's counsel's hours and rate(s) of pay, within ten (10) days of the filing of defendant's fees declaration, and defendant may file a reply within five (5) days thereafter. The matter will then be determined in Chambers without oral argument pursuant to Local Rule 7–15.

5. Defendant's request for other sanctions regarding its motion to compel deposition IS **DENIED WITHOUT PREJUDICE**.